## Case No. 13,149.
### SNOW v. WOPE.
[2 Curt. 301.] [1]

Circuit Court, D. Massachusetts. May Term, 1855.[2]

SEAMEN—SHIPPING ARTICLES—ACT OF CONGRESS—POWER OF MASTER TO IMPRISON—TORT.

1. If the shipping articles do not sufficiently describe the voyage, the seaman may leave the vessel at any time: and if the master imprison him because he refuses to remain and do duty on board, this is a tort.

, [Cited in The Gem, Case No. 5.304.]

2. A description of a voyage in the articles, as being, "from the port of Boston to Valparaiso, and other ports in the Pacific Ocean, at and from thence home, direct, or via ports in the East Indies, or Europe," is not a compliance with the requirement of the 1st section of the act of July 20, 1790 (1 Stat. 131), and the contract is void by the 10th article of the 1st section of the act of July 20, 1840 (5 Stat. 395).

[Cited in The Hermine, Case No. 6,409.]

3. The power of the master to imprison the seamen on shore, held not to exist in this case.

[Cited in The Elwin Kreplin, Case No. 4.427.]

[Appeal from the district court of the United States for the district of Massachusetts.]

In admiralty.

Mr. Dehon, for appellant.

C. G. Thomas, contra.

CURTIS, Circuit Justice. The appellee, Edward Wope, filed his libel in the district court, against Loring Snow, alleging that the latter was master of the ship Loochoo, on a voyage from Boston to Valparaiso; that the libellant was a mariner on board, and was entitled to be discharged on arrival at Valparaiso; that he there requested the master to discharge him, and, instead of doing so, the master caused him to be imprisoned by the local authorities on shore, for the space of thirty-four days, in a common prison of the place; and when brought on board, at the expiration of that time, in order to compel him to do duty on the passage to the United States, confined him in irons without food for the space of about twenty-four hours. Both the confinement in the prison, on shore, and afterwards on shipboard, are admitted; and the alleged justification is, that the libellant, being bound to continue on board and do his duty as a mariner, insisted on being discharged at Valparaiso, and refused to do any more duty on board; and the imprisonment on both occasions was resorted to necessarily, as a means to reduce the libellant to due subordination. The first question is, whether the libellant was entitled to his discharge at Valparaiso; for, if he was, the imprisonment on shore and on shipboard, was illegal. I am of opinion he was entitled to his discharge.

By the 1st section of the act of congress of July 20, 1790, it is provided, that the master

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]
2 [Affirming Case No. 18,042.]

of such a vessel as this, bound on a foreign voyage, shall make an agreement, in writing or print, with every seaman or mariner, "declaring the voyage or voyages, term or terms of time, for which such seaman or mariner shall be shipped." And if the seaman shall not have signed such a contract, he is declared not bound by the regulations, nor subject to the penalties of the act. The act of congress of July 20, 1840, in the tenth article of its first section, declares: "All shipments of seamen made contrary to this and other acts of congress, shall be void; and any seaman so shipped may leave the service at any time," &c.

The articles signed by Wope, describe the voyage to be, "from the port of Boston to Valparaiso, and other ports in the Pacific Ocean, at and from thence home, direct, or via ports in the East Indies, or Europe." It would have been within this description, after leaving Valparaiso, to sail to any number of ports in the Pacific Ocean, then to visit in succession every port in the East Indies, or in Europe, and to occupy such time in their passages and in staying in the different ports, as the master, under the directions of the owner of the ship, might think fit. It is manifest that no definite and specific voyage, nor even any limited number of voyages, is here described; but liberty exists to carry on any number of voyages, during such time as the vessel may last, at the discretion of the master, provided that the first port to which the vessel goes is Valparaiso, and her ultimate port of destination is Boston. These are the only fixed termini, and between them, there are no limits of time, and scarcely any of space. If this is a sufficient description to satisfy the requirement of the act, it is an idle requirement, and affords no protection to the seaman. It leaves him bound for a service, which is not perpetual, only because the vessel may not last as long as his life; or it may be the pleasure of the master or owner to terminate it by a return to the home port of the vessel. Now I cannot concur in the opinion of Judge Hopkinson,—Magee v. The Moss [Case No. 8.944].—that when articles contain too broad a description of a voyage to satisfy the requirement of the act of congress, a court of admiralty will take care that an oppressive use is not made of it, but that as long as the master does only what the court thinks reasonable, under such articles, the seaman cannot leave the service. Independent of the express provisions of the act of 1840, I should prefer the contrary opinion of Judge Ware,—Pratt v. Thomas [Id. 11,377]. But under the act of 1840, I take it to be clear, that if the owner or master has not obeyed the act of 1790, in describing the voyage or voyages in the articles, the seaman may leave the service at any time. In my opinion, it was not obeyed in this case.

I feel no inclination to strain after a con-

struction of the description of the voyage, which might by possibility bring it within the act of congress. The master or owner chooses his own phraseology, and should take care to use such as will not give rise to any suspicion, that he designed to have the contract vague, to leave him the more power over the men. The policy of the law forbids this. I know many commercial enterprises are so undefined at their outset, that they cannot be described by precise geographical limits. Such are most whaling voyages. But some description of the character of the voyage, or the term of time not to be exceeded, can, with due care, give to these contracts that certainty, which justice to the men, as well as the positive demands of the act of congress, require.

My opinion therefore is, that Wope was entitled to his discharge when he requested it, and consequently that his imprisonment was illegal. But if he had not been entitled to it, I should still be of opinion, that the master committed a tort, by confining him on shore in the common prison. The consul of the United States for that port was absent. His clerk came on board and saw the libellant, and told him he was not entitled to his discharge, and appears to have aided the master to procure the interposition of the local authorities. If this had been done by the consul, under the powers conferred on him by the act of congress of July 20, 1840, and there was no illegality in the conduct of the master in applying to him for his action in the matter, then, as was held by this court in Jordan v. Williams [Case No. 7,528], the master would not have been liable for such imprisonment. But no one but a duly appointed consul or commercial agent of the United States, is intrusted by the act of congress, with power to employ the local authorities to check insubordination. No justification can be found in the act of the clerk or assistant of the consul. The master must rely in this case upon the authority with which he is clothed, by the marine law, to imprison his men; and if it had been true, that the libellant was bound to continue on board and do duty, and that he insisted on his discharge and refused duty, no case existed for confining him in a foreign jail; especially in such a prison as is described by the testimony in this case. It is suggested, that the vessel was lying in a roadstead, taking in cargo, and that people from the shore were frequently on board; and that four others of the men were combined with the libellant, and also refused duty. But the crew and officers were twenty-one, all told; there was no insubordination among the rest of the crew; nor was there any difficulty with these men, save that they claimed a right to be discharged, as they alleged, pursuant to the contract made with them in Boston. Under these circumstances, there was no such necessity for removing the men on shore, and confin-ing them in the common prison of the place, as can justify the master in doing so. I have not thought it necessary to investigate minutely, the question whether the libellant was entitled to his discharge at Valparaiso, by virtue of a stipulation to that effect made by him with the shipping master, at the time he signed the articles, and which he believed the shipping master put down on the articles. The testimony on this point is conflicting, and the phraseology of the articles, standing by itself, is equivocal. If I were obliged to decide either way, I should probably say that I was not dissatisfied with the finding of the district judge on this subject. But I am convinced the libellant believed he was entitled to his discharge, and on the other hand that the master had no knowledge of the special stipulation on which the libellant relied; and that the master acted in good faith, in refusing to discharge him. As the master committed a tort, he must pay such damages as to indemnify the libellant, even though he acted under the belief that he was doing his duty. I must say, however, that his omission to visit the men, while at the prison, and his total neglect of their necessities there, which is not satisfactorily accounted for, in my judgment aggravates his wrong. But I shall not disturb the decree of the district court as it respects the amount of damages. In an action of tort, when the damages are within the sound discretion of the court, of the first instance, either some error in principle, or a pretty wide departure from my individual views respecting their amount, would alone induce me to reverse a decree, in order to change the damages. I perceive no such departure, and no such error in this case. By an amendment, the libellant claims additional damages for bringing him to Boston, and leaving him here instead of at Valparaiso. But it was admitted that wages had been sued for and recovered for the entire voyage; and I think this prevents the libellant from treating the master as a wrongdoer, in bringing him to Boston, instead of leaving him at Valparaiso.

The decree of the district court is affirmed, with six per cent. damages, and costs.